UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| Brain Pharma, LLC, a Florida limited liability company, | CASE NO.  0:12-cv-60141-RNS |
| Plaintiff, | |
| v. | |
| Woodbolt Distribution, LLC d/b/a Cellucor, a Texas limited liability company, | |
| Defendant. | |

**PLAINTIFF   BRAIN   PHARMA   LLC'S   MOTION   FOR   PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Brain Pharma, LLC ("BPI"), pursuant to Federal Rule of Civil Procedure 65, Section 34 of the Federal Trademark Act, 15 U.S.C. § 1116, and Local Rule 7.1, moves for a preliminary injunction to enjoin Defendant, Woodbolt Distribution, LLC d/b/a Cellucor ("Cellucor") from marketing, selling, distributing or otherwise engaging in any conduct that infringes BPI's A-HD™ ("A-HD Mark"), as follows:

1.      On January 26, 2012, BPI filed a Complaint [D.E. 1] against Cellucor, including counts for federal and state trademark infringement and unfair completion.

2.      Cellucor's activities are causing and, if not restrained and enjoined, will continue to cause substantial and irreparable harm to BPI.

3.      BPI has no adequate remedy at law.

4.      BPI asks this Court to enter an injunction restraining and enjoining Cellucor and its subsidiaries, officers, agents and employees and all those persons in active concert or participation with them from:

(a)      selling, marketing, advertising, and importing its SUPER HD product and any other products confusingly similar to the A-HD Mark;

(b)      unfairly competing with BPI;

(c)      causing a likelihood of confusion or misunderstanding as to source sponsorship, approval, or certification of SUPER HD, or as to any affiliation, connection, or association of it with or approval by BPI, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to BPI and its A-HD Mark.

## I.      OVERVIEW

BPI owns the A-HD Mark which is associated with BPI's  A-HD product, a muscle sculpting nutritional supplement.  A-HD has enjoyed extreme success in the year that it has been marketed and sold, and consumers have come to recognize and associate A-HD as a high quality product.  Cellucor, despite having full knowledge of BPI's propriety rights to A-HD, has intentionally sought to capitalize on the goodwill associated with A-HD by introducing its own muscle sculpting nutritional supplement under the confusingly similar name SUPER HD.  BPI, therefore, respectfully asks this Court to enter a preliminary injunction restraining Cellucor from using the name SUPER HD in connection with its nutritional supplements.

BPI has satisfied the requirements for obtaining a preliminary injunction because it has a

substantial likelihood of succeeding on the merits, BPI will suffer irreparable injury absent issuance of an injunction, the threatened injury to BPI is greater than any damage the proposed injunction may cause Cellucor, and the proposed injunction does not go against the public interest.

First, BPI's federal and state trademark infringement and unfair competition claims are likely to succeed on the merits.  These causes of action principally require a showing of likelihood of confusion between the BPI and Cellucor marks.  Evidence of actual confusion, of course, effectively ends the inquiry regarding infringement.  In the few weeks that SUPER HD has been marketed and sold, there have already been multiple instances of actual confusion amongst consumers of BPI's A-HD product as to BPI being the source of SUPER HD.

In addition, A-HD is a strong mark entitled to the highest level of trademark protection because A-HD is a coined term with no actual meaning.  A-HD and SUPER HD are similar marks used on nearly identical muscle sculpting products.  A-HD and SUPER HD are sold through the same channels of trade, such as through GNC and both target consumers interested in improving their physiques.  Both products are also advertised on the same websites and in multiple issues of a nationally-distributed fitness magazine.  The similarity of the marks, the similarity of the products they name, the common retail outlets, customers, and advertising media, combined with instances of actual confusion all compel a finding that BPI's claims are likely to succeed on the merits.

In addition to evidence of actual confusion and similarity, it is apparent that Cellucor intentionally adopted SUPER HD as the name for its muscle sculpting agent in order to benefit from the goodwill associated with BPI's A-HD product and the tremendous success .  Indeed, the same person who recommended the name A-HD to BPI and was aware of its extreme

3

commercial success is now a vice president of Cellucor, who joined the company one month prior to Cellucor's introduction of SUPER HD.  Cellucor's bad faith selection of SUPER HD is further evidenced by the fact that it is wholly inconsistent with Cellucor's established product naming scheme which uses a number/letter combination for its muscle building and weight loss products, such as C4, M5, P6, T7, L2, and D4.  Cellucor's intent to wrongfully capitalize on the goodwill associated with BPI's A-HD Mark further supports a finding of likelihood of confusion, and therefore a strong likelihood of success on the merits.

Second, Cellucor should be enjoined from using SUPER HD in connection with its nutritional supplements because such use is irreparably harming BPI.  In the few weeks that SUPER HD has been promoted and sold, there have already been at least six instances of actual consumer confusion.  Moreover, A-HD's reputation as a high quality product among consumers may be endangered by Cellucor's introduction of a nearly identical muscle sculpting product with a confusingly similar name.  An injunction is necessary to prevent further harm to BPI and the goodwill associated with its A-HD Mark.

Third, the threatened injury to BPI is significantly greater than any damage the proposed injunction may cause Cellucor.  BPI has devoted substantial time, effort and resources to the development and extensive promotion of the A-HD product.  As a result of BPI's efforts, the public has come to recognize the A-HD Mark and A-HD as signifying a high quality product geared towards enhancing muscular physique as evidenced by its high customer ratings on www.gnc.com and www.bodybuilding.com.  As such, the goodwill associated with BPI's A-HD mark is tremendous.

Cellucor, on the other hand, started selling SUPER HD in February 2012 and has not yet established a strong commercial presence or reputation.  Accordingly, changing the product

name now would place a minimal burden on Cellucor compared to the harm to BPI if Cellucor is permitted to continue using its confusingly similar mark on a product nearly identical to A-HD. Furthermore, any damage to Cellucor associated with issuance of an injunction is the result of its intentional adoption of SUPER HD to trade on the goodwill associated with A-HD.

Finally, an injunction will serve the public interest because it will minimize confusion in the marketplace.

These facts and the controlling Eleventh Circuit law entitle BPI to a preliminary injunction to stop the irreparable harm to its goodwill and reputation by Cellucor's actions.

## MEMORANDUM OF LAW

## II.    STATEMENT OF FACTS

### A.    BPI's Trademarks Rights to A-HD For Dietary Supplements and Related Goods

BPI is a sports nutrition company engaged in the business of manufacturing and selling sports nutrition products, including products focused on weight loss, muscle building and athletic performance.  (Declaration of Derek Ettinger in Support of Plaintiff's Motion for a Preliminary Injunction ("Ettinger Decl."), ¶ 2).  BPI owns several trademarks in connection with its business, including the A-HD Mark for its A-HD product, which is a dietary supplement in capsule form designed to improve muscle tone and appearance.  (*Id.* at ¶¶ 3 and 6.)  On October 22, 2010, BPI filed an intent-to-use application to register its A-HD Mark with the United States Patent and Trademark Office in International Class 5 for "dietary supplements, namely, all-natural supplements for bodybuilding that promote testosterone production and block estrogen production and that are sold without a prescription in vitamin and nutrition shops and online stores featuring over-the-counter nutritional supplements."  (Declaration of Christine Hernandez in Support of Plaintiff's Motion for a Preliminary Injunction ("Hernandez Decl.") Ex. 12;

Ettinger Decl. ¶ 6).   BPI first used the A-HD Mark in commerce on January 17, 2011. (Hernandez Decl. Ex. 14; Ettinger Decl. ¶ 6).

BPI's application to register its A-HD Mark was approved for publication in the USPTO Official Gazette without any office actions issued by the Examining Attorney.  (Hernandez Decl. Ex. 13).  Although the mark has not officially been registered, it was approved for registration on the Principal Register by the USPTO on February 13, 2012.  (*Id.*).

### B.     BPI has Extensively Marketed its A-HD Product and the Product has Been an Immediate and Significant Success in the Marketplace

BPI has devoted substantial time, effort and resources to the development and extensive promotion of the A-HD product.  BPI has spent over $470,000 in promoting and advertising its A-HD product, which prominently displays the A-HD Mark.  (Ettinger Decl. ¶¶ 9, 11 & Exs. A-GG).    This includes advertising in various bodybuilding magazines and websites, flyer distributions and attendance at industry trade shows.  (*Id.*).  BPI has also sent "email blasts" to its over 25,000 BPI Insiders (mailing list subscribers) promoting A-HD and worked with Europa Sports (A-HD's distributor) to send an email blast to its approximately 25,000 subscribers.  (*Id.* ¶ 12 & Exs. HH-KK).   BPI also maintains an active presence on Facebook.  BPI's current Facebook page, at http://www.facebook.com/BPIonline, has already received over 3,700 "likes," and its previous Facebook account received over 25,000 "likes."  (*Id.* ¶ 13; Hernandez Decl. Ex. 17).  BPI regularly interacts with its consumers concerning BPI products including A-HD through postings on its Facebook "wall."  (*Id.*).

A-HD is currently distributed nationwide in both retail stores and online, including through the nationwide nutrition retailer GNC and its website www.gnc.com, The Vitamin Shoppe's retail stores and its website www.vitaminshoppe.com, www.bodybuilding.com, and over 40 other specialty health and nutrition websites.  (Ettinger Decl. ¶ 7; Hernandez Decl. Exs.

1-5, 25-65).   A-HD is also sold through Europa Sports Products ("Europa"), a wholesale distributor of nutritional supplements to gyms and retail health food stores.  (Ettinger Decl. ¶ 7).

A-HD has been extremely successful, generating over $5.7 million in gross sales revenue in the little over a year it has been sold.  (Ettinger Decl. ¶ 8).  These sales have significantly increased over time.  In the six-month period from April 2011 to September 2011, sales totaled approximately $2.2 million.  (*Id*.)  In just the four and a half month period since then, from October 2011 to mid-February 2012, BPI already surpassed that, reaching over $3 million in sales.  (*Id*.)  A-HD is also the best selling BPI product in GNC stores.  (*Id*.).

As a result of BPI's efforts, the public has come to recognize the A-HD Mark and A-HD as signifying a high quality product geared towards improving muscle tone and appearance.  For example, A-HD has an "excellent" consumer rating on www.bodybuilding.com and over a 4 out of 5 star consumer rating on www.gnc.com. (Hernandez Decl. Exs. 2-4.)

### C.    Cellucor's Infringing Conduct is Irreparably Harming BPI

#### 1.    Cellucor is Marketing and Selling a Nutritional Supplement Under the Confusingly Similar Name SUPER HD

Like BPI, Cellucor is a sports nutrition company engaged in the manufacture and sale of nutritional supplements.  (Hernandez Decl. Ex. 19.)  In January 2012, Cellucor released several promotional advertisements, which advised that Cellucor would offer SUPER HD at the Los Angeles Fitness Expo January 28-29, 2012.  (*Id*. Exs. 20, 21).  Cellucor began selling SUPER HD shortly thereafter, and it is now available on GNC's website.  (*Id*. Exs. 7-9.)

Cellucor applied to register SUPER HD, as well as CELLUCOR SUPER HD, on the federal trademark register on January 23, 2012 under its corporate name, Woodbolt.  (Hernandez Decl. Exs. 15, 16.)  Like BPI's trademark application for A-HD, the SUPER HD trademark application seeks registration in International Class 5 and also covers dietary and nutritional

supplements.  Specifically, the SUPER HD trademark application lists:

> Dietary and nutritional supplements; Dietary and nutritional supplements for endurance sports; Dietary and nutritional supplements used for weight loss; Dietary food supplements; Dietary supplements; Dietary supplements for human consumption; Dietary supplements for humans; Food supplements; Food supplements for humans; Health food supplements; Nutraceuticals for use as a dietary supplement; Nutraceuticals for use as a dietary supplement for weight loss; Nutritional supplements; Nutritional supplements for weight loss; Nutritional supplements in the form of capsules; Weight management supplements.

(*Id*. Ex. 15).  Cellucor's SUPER HD trademark application claims October 17, 2011 as the date of first use and January 4, 2012 as the date of first use in commerce.  (*Id*.).  Both of these dates are long after BPI used its A-HD Mark in January 2011.  (Hernandez Decl. Ex. 14).

As titled and advertised, SUPER HD is confusingly similar to A-HD.  Like BPI's A-HD, Cellucor is promoting SUPER HD as a muscle sculpting product.  Indeed, the label on the SUPER HD bottle as well as Cellucor's advertising materials describe the product as a "fat targeting sculpting agent."  (Hernandez Decl. Ex. 22).  Because the products themselves are virtually identical, Cellucor's use of "HD" is likely to cause consumer confusion.  Cellucor's promotional materials refer to the product by emphasizing the "HD" portion of the product.  (*Id*. Ex. 18 at 6 (posting by Cellucor on its Facebook page referring to its product as "HD")).

In addition to the similarities between the products detailed above, both A-HD and SUPER HD products are sold though identical trade channels to identical consumers and through identical advertising media.  Specifically, both A-HD and SUPER HD products are currently sold through GNC's on-line store, and both will also soon be available in GNC's retail stores as well as on www.bodybuilding.com, to consumers interested in improving their physiques. [1]  (*Id*.

---

[1] SUPER HD is currently being sold on www.gnc.com.  (Hernandez Decl. Exs. 7-9.).  Cellucor's promotional materials state that the product will also be sold in GNC retail stores, on Cellucor's website and on

Exs. 1-4, 6-9, 20).  Indeed, both pages of GNC's website advertising SUPER HD for sale note that "people who buy [SUPER HD] also buy" BPI's A-HD product.  (*Id*. Exs. 2-3).  Both products have also been advertised in the two most recent issues of Muscle & Body Magazine. (*Id*., Exs. 22-23.)

BPI has not authorized, consented to, sponsored, endorsed, or approved Cellucor's exploitation of the A-HD Mark with its confusingly similar SUPER HD product.  Cellucor's actions are resulting in exploitation of the A-HD Mark by selling SUPER HD in direct competition with BPI, and creating actual and further likelihood of confusion in consumers who believe that SUPER HD is affiliated with BPI.  As a result of Cellucor's infringing activities, BPI's A-HD brand has been and continues to be irreparably injured, and future confusion among consumers will further impact BPI's ability to market and sell its A-HD product.

Accordingly, BPI filed this action against Cellucor on January 26, 2012, which asserts claims for (1) trademark infringement in violation of 15 U.S.C. § 1125(a); (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) trademark infringement of an unregistered mark under Florida common law; and (4) common law unfair competition.  [D.E. 1].

## 2.    Cellucor's SUPER HD Mark is Intentionally Trading on the Goodwill Associated with BPI's A-HD Mark

It is clear that Cellucor's use of SUPER HD for a fat targeting and sculpting agent is intended to trade on the goodwill associated with BPI's A-HD Mark for two reasons.  First, the same person who recommended the name A-HD to BPI is now a vice president of Cellucor.  The name "A-HD" was suggested to BPI by Dustin Campbell, at the time a Director and Manager at www.bodybuilding.com, a website containing bodybuilding information as well as an online store selling nutritional supplements.  (Ettinger Decl. ¶ 4).  Mr. Campbell said that A-HD would

---

www.bodybuilding.com in connection with the product's actual release in March 2012.  (*Id*. Ex. 20.)

be a distinctive name for the product and one that would make a favorable impression on customers of the online nutritional supplement store at www.bodybuilding.com. (*Id*.) Mr. Campbell served as the head buyer for all sports nutrition products at www.bodybuilding.com, and was well-acquainted with subsequent sales of A-HD on the website. (*Id*.) In or around December, 2011, Mr. Campbell left Bodybuilding.com and became Cellucor's Vice President of Global Business Development. (Ettinger Decl. ¶ 5; Hernandez Decl. Ex. 24). In January, 2012, within a month of Mr. Campbell joining Cellucor, Cellucor began promoting a product similar to BPI's A-HD product, called "SUPER HD." (Hernandez Decl. Exs. 20, 21).

Second, the name SUPER HD is completely out of character with the rest of Cellucor's product naming scheme. With the exception of SUPER HD, Cellucor's product names for its muscle growth and weight loss products contains a combination of a single letter followed by a single number, or a combination of letters and numbers. (Hernandez Decl. Exs. 10, 11). For example, Cellucor's muscle growth products are named C4, NO3, M5, P6, N0 and R3. (*Id*. Ex. 10). Moreover, Cellucor's weight loss products are named: D4TS, T7, L2, WS1, D4 and KIT. (*Id*. Ex. 11). BPI does not believe there is any coincidence between Mr. Campbell's role in naming BPI's product A-HD, his being informed about the success of that product, and subsequently selecting a product name confusingly similar to A-HD for a nearly identical product, marketing and sold through identical channels of trade.

### 3. Cellucor's Use of SUPER HD Has Caused Actual Consumer Confusion With A-HD's Customers in the Marketplace.

SUPER HD has been out for less than one month and already BPI's customers have experienced multiple instances of actual confusion. Indeed, several BPI employees have received telephone calls from A-HD customers asking about SUPER HD:

- BPI's East Coast Sales Manager received a call from a BPI customer on or about February 9, 2012 asking if BPI had changed the name of A-HD to Super HD. The

customer expressed a love for A-HD and concern that the product was being discontinued.  (Declaration of Christopher MacKenzie ("MacKenzie Decl.") ¶¶ 2-3).

- A BPI Sales Representative received a call from a BPI customer on February 15, 2012 expressing that he was a "big fan" of BPI's A-HD nutritional supplement, heard of SUPER HD and believed that it was a "new and improved" version of A-HD.  The caller asked BPI's Sales Representative when BPI would be launching SUPER HD.  The customer explained to BPI's Sales Representative that he had limited monetary funds and wanted to save his money to purchase the "new and improved" version rather than the existing A-HD.  (Declaration of Robert Borraza ("Borazza Decl.") ¶¶ 2-3).

- A BPI Customer Service Representative, Abraham Farhan, received a call on February 8, 2012 from a consumer asking when BPI was launching SUPER HD.  (Declaration of Abraham Farhan ("Farhan Decl.) ¶¶ 2-3).

- Mr. Farhan received a call on February 9, 2012 from an A-HD customer saying that he had heard of a product called SUPER HD and though the product was manufactured by BPI Sports.  The caller inquired as to whether BPI had changed the name of A-HD to SUPER HD.  (Farhan Decl. ¶ 6).

- On the morning of February 17, 2012, at approximately 10 am EST, Mr. Farhan received a third call concerning Super HD.  The caller had previously used A-HD, combining it with BPI's RoxyLean product.  The customer told Mr. Farhan he understood Super HD was a new upgraded version of A-HD, and asked if Super HD could also be stacked with RoxyLean.  (Farhan Decl. ¶ 7).

- Later that day, at around 3 pm on February 17, 2012, Mr. Farhan received a call from a man identifying himself as "Reuben."  He asked Mr. Farhan the price of Super HD and said "I don't see it on your website."  (Farhan Decl. ¶ 8).

All of these customers were informed that SUPER HD is not a BPI product.  (MacKenzie Decl. ¶ 4, Borraza Decl. ¶ 4, Farhan Decl. ¶¶ 3, 6-8).  If these six customers called BPI about SUPER HD, however, it is certain that other consumers who have not contacted BPI have been and will continue to be confused as to the affiliation, connection, or association between BPI's A-HD and Cellucor's SUPER HD products, and whether SUPER HD originates from, is sponsored by, and/or approved by BPI.  Accordingly, if not enjoined Cellucor's use of SUPER HD will continue to irreparably harm BPI and the goodwill associated with its A-HD Mark.

## II.   BPI IS ENTITLED TO A PRELIMINARY INJUNCTION RESTRAINING CELLUCOR'S CONTINUED MARKETING AND SALE OF A NUTRITIONAL SUPPLEMENT UNDER THE SUPER HD NAME

### A.   Standards for Obtaining Preliminary Injunctive Relief

When a party reasonably fears irreparably injury from another's conduct, a preliminary injunction may be granted to preserve the status quo until the court has an opportunity to decide whether to issue a permanent injunction.  *See Schiavo ex rel. Schindler v. Schindler*, 403 F.3d 122, 1229 (11th Cir. 2005).  In the Eleventh Circuit, a party is entitled to a preliminary injunction where the moving party establishes "(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest."  *Carillon Imp., Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir.  1997).  As discussed in detail below, BPI has satisfied the requirements for issuance of a preliminary injunction against Cellucor's use of SUPER HD for nutritional supplements.

### B.   BPI's Claim Under 15 U.S.C. § 1125(a) is Likely to Succeed on the Merits

Count I of BPI's complaint is a claim for trademark infringement under 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act.  Compl. at ¶¶ 28-35.  Under Section 43(a)

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person … is liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(a).  Accordingly, to prevail on a claim under 15 U.S.C. § 1125(a), a

12

plaintiff must establish that the defendant adopted a mark confusingly similar to the plaintiff's mark such that there is a likelihood of confusion as to the origin of the goods. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 935 n. 16 (11th Cir. 2010).

The Eleventh Circuit has adopted a seven factor test for determining whether a likelihood of confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Caliber*, 605 F. 3d at 934-35; *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Evidence of actual confusion is the most important, followed by the strength of the mark which is determined by the type of classification it receives. *Caliber*, 605 F.3d at 936-938. Applied here, all seven factors weigh heavily in favor of BPI.

### 1.    A-HD is a Strong Trademark which is Entitled to the Highest Level of Trademark Protection

A trademark is defined to include "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 768 (1992); 15 U.S.C. § 1127. The level of trademark protection afforded to a particular mark hinges upon how it is classified. *Frehling,* 192 F.3d at 1335; *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983). The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives. *Id*. The strength of the mark is the first factor used to determine whether there is a likelihood of confusion. *Caliber,* 605 F.3d at 934.

13

The Eleventh Circuit recognizes four categories of distinctiveness, listed in ascending order of strength: "(1) generic— marks that suggest the basic nature of the product or service; (2) descriptive— marks that identify the characteristic or quality of a product or service; (3) suggestive— marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful— marks that bear no relationship to the product or service, and the strongest category of trademarks." *Tana v. Dantana's*, 611 F.3d 767, 774 (11th Cir. 2010) (quoting *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797–98 (11th Cir. 2003)). "Suggestive and arbitrary or fanciful marks are deemed 'inherently distinctive' because 'their intrinsic nature serves to identify a particular source of a product' and are generally entitled to trademark protection." *Id*. (quoting *Two Pesos*, 505 U.S. at 768). Generic marks are generally incapable of receiving trademark protection. *Id*. Descriptive marks are inherently distinctive, but may become sufficiently distinctive to enjoy trademark protection by acquiring "secondary meaning" -- the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id*.

A-HD falls into the fourth and strongest category because it is a "coined" term.  BPI's A-HD Mark has no meaning; the letter string "A-HD" is not a word, has no prior use in the English language and does not describe a characteristic of the product.  It is well-settled that an arbitrary arrangement of letters is entitled to a wide scope of protection.  *See, e.g.*, 1 McCarthy on Trademarks and Unfair Competition § 7:10; *see also Electronic Commcn's, Inc. v. Electronic Components for Industry Co.*, 443 F.2d. 487, 488 (8th Cir. 1971) (finding support for district court ruling that "ECI" was arbitrary and fanciful); *CAE Inc. v. Clean Air Eng'g, Inc*., 267 F.3d 660, 684 (7th Cir. 2001) (unpronounceable letter combination "CAE" entitled to strong

trademark protection). BPI's distinctive combination of letters has become recognized by the buying public as uniquely associated with BPI's A-HD product, and is entitled to this Court's strongest protection.

In addition to being strong, the A-HD Mark should also be presumed valid. Because the A-HD trademark has been approved by the USPTO for registration and BPI is simply awaiting issuance of the registration certificate, the A-HD Mark should receive the same presumption of validity afforded registered trademarks. *See* 15 U.S.C. § 1057(b) (certificate of registration is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate).

**2.    There is a Strong Similarity Between BPI's A-HD Trademark and Cellucor's SUPER HD Mark**

The second factor used to determine likelihood of confusion is the similarity of the marks. *Caliber*, 605 F.3d at 934. This requires a comparison of the marks and consideration of the "overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337; *John H. Harland Co.*, 711 F.2d at 975-76. While not identical, A-HD and SUPER HD are similar marks. Both contain and end with "HD." SUPER HD has already been referred to by Cellucor in the marketplace as just "HD" thereby making the similarity of use even closer. (Hernandez Decl. Ex. 18 at 4 and 6 (postings by Cellucor and a consumer on Cellucor's Facebook page referring to the product as "HD")). Marks with identical endings have been found to be confusingly similar. *See, e.g., Victor Co. of Japan, Ltd. v. International Video Corp.*, 167 U.S.P.Q. 252 (TTAB 1970) (JVC confusingly similar to IVC); *Martahus v. Video Duplication Servs.*, Inc. 3 F.3d 417 (Fed. Cir. 1993) (VDS, abbreviation for Video Duplication Services, successfully petitioned to cancel registration of

VCDS, an abbreviation for Video Cassette Duplication Services).  This factor also weighs in favor of BPI.

### 3. The Products Offered By BPI and Cellucor Under Their Respective Marks Are Nearly Identical

The third factor used to determine likelihood of confusion is the similarity of products the marks represent.  *Caliber*, 605 F. 3d at 934.  Assessing the similarity of the product offered under the asserted mark and the product offered by the alleged infringer requires a determination as to whether the products are the kind that the public attributes to a single source, *not* whether or not the purchasing public can readily distinguish between the products of the respective parties. *Frehling,* 192 F.3d at 1338; *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985).  The focus is on the reasonable belief of the average consumer as to what the likely source of the goods was.  *Frehling,* 192 F.3d at 1338.

BPI's A-HD product and Cellucor's SUPER HD product are both nutritional supplements in pill form marketed and sold as products designed to improve muscle tone and appearance. (Ettinger Decl. ¶ 3; Hernandez Decl. Ex. 22.).  Indeed, while SUPER HD has not yet been introduced to GNC retail stores, when it does it is likely to be located within the sports nutrition section and appear in close proximity to A-HD.  (Ettinger Decl. ¶ 15). "The greater the similarity between the products and services, the greater the likelihood of confusion."  *John H. Harland Co.,* 711 F.2d at 976.  The near identical nature of these products exacerbates the level of consumer confusion that is likely to occur, and as discussed below, has already occurred.

### 4. BPI and Cellucor Use Identical and Overlapping Sales Methods and Target the Same Customers for A-HD and SUPER HD

The fourth factor used to determine likelihood of confusion is the similarity of the parties' retail outlets (trade channels) and customers.  *Caliber*, 605 F.3d at 934.  This factor takes into consideration "where, how, and to whom the parties' products are sold."  *Frehling,* 192 F.3d

at 1339.

BPI has satisfied this factor because A-HD and SUPER HD products are sold though identical channels of trade to identical consumers.  Specifically, both A-HD and SUPER HD products are sold through GNC's website www.gnc.com and will both be sold in GNC's retail stores and on www.bodybuilding.com.  (Ettinger Decl. ¶ 7; Hernandez Decl. Exs. 1-4, 6-9, 20). BPI's A-HD and Cellucor's SUPER HD are also sold to the same class of consumers, people interested in improving their physiques.  Indeed, both pages of GNC's website advertising SUPER HD for sale note that "people who buy [SUPER HD] also buy" BPI's A-HD product. (Hernandez Decl. Exs. 2, 3).

### 5.   A-HD and SUPER HD are Advertised in the Same Space and Through the Same Methods

The fifth factor used to determine likelihood of confusion examines the similarity of the parties' methods of advertising.  *Frehling*, 192 F.3d at 1339; *John H. Harland Co.*, 711 F.2d at 976.  "The standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Frehling.*, 192 F.3d at 1339 (citing *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1166 (11th Cir. 1982)).

BPI advertises A-HD in body building magazines and websites, through flyer distribution, email blasts and trade shows.  (Ettinger Decl. ¶¶ 9-11).  It also maintains an active presence on Facebook, interacting regularly with consumers concerning BPI products including A-HD.  (*Id.*, ¶ 13).  Like A-HD, SUPER HD is marketed to GNC customers, and both products appear in the two most recent issues of Muscle & Body Magazine.  (Ettinger Decl. Ex. LL; Hernandez Decl. Exs. 22, 23).  This factor also favors BPI.

17

**6.    Cellucor is Intentionally Trading On BPI's Goodwill for A-HD by Naming its Product SUPER HD**

Intent, the sixth factor for determining likelihood of confusion, focuses on the alleged infringer's subjective intent to deliberately derive a benefit from the plaintiff's business reputation, or the extent to which the infringer was intentionally blind to the adoption of a confusingly similar mark.  *Frehling*, 192 F.3d at 1340; *John H. Harland Co.*, 711 F.2d at 977.

It is clear that Cellucor's use of SUPER HD for a fat targeting and sculpting agent is intended to trade on the goodwill associated with BPI's A-HD Mark.   Dustin Campbell suggested the name "A-HD" for BPI's product when he was a Director/Manager at www.bodybuilding.com.  (Ettinger Decl., ¶ 4).  Because Mr. Campbell also served as the head buyer for all sports nutrition products at www.bodybuilding.com, he was well-acquainted with subsequent sales of A-HD on the website.  (*Id*.).  Mr. Campbell left Bodybuilding.com and became Cellucor's Vice President of Global Business Development in or around December 2011.  (Ettinger Decl. ¶ 5 and Hernandez Decl. Ex. 24).  In January 2012, within a month of Mr. Campbell joining Cellucor, Cellucor began promoting SUPER HD.  (Hernandez Decl. Exs. 20, 21).

Second, the name SUPER HD is completely out of character with the rest of Cellucor's product naming scheme.  With the exception of SUPER HD, Cellucor's product names for its muscle growth and weight loss products contain a combination of a single letter followed by a single number, or a combination of letters and numbers such as C4, NO3, M5, T7, L2, and D4. (Hernandez Decl. Exs. 10, 11).).   Cellucor's hiring of a Dustin Campbell and immediate introduction of SUPER HD for a product nearly identical to A-HD marketed and sold through identical channels of trade should not be deemed as a coincidence.

Cellucor's bad faith intent alone is enough to establish an inference that there is

likelihood of confusion between A-HD and SUPER HD.  *Frehling*, 192 F.3d at 1340 ("[i]f it can

be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from

the plaintiff's business reputation, this fact alone may be enough to justify the inference that

there is confusing similarity"); *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th

Cir.  1994) ("[l]ikelihood of confusion can be found as a matter of law if the defendant intended

to derive benefit from the plaintiff's trademark").

### 7.    There is Strong Evidence of Actual Confusion Between A-HD and SUPER HD

The  seventh  and  final  factor,  actual  confusion,  is  the  best  evidence  of  a  likelihood  of

confusion.  *Caliber,* 605 F.3d at 936; *Frehling,* 192 F.3d at 1340; *John H. Harland Co.*, 711 F.2d

at  978.    "While  [the  Eleventh  Circuit  has]  no  hard-and-fast  rule,  under  [its]  standard  "the

quantum of evidence needed to show actual confusion is relatively small."  *Caliber*, 605 F.3d at

936.

Although  SUPER  HD  was  only  introduced  in  the  last  month,  BPI's  customers  have

experienced multiple instances of actual confusion.  Indeed, as described in detail in Section

II.3.C., several BPI employees have received telephone calls from A-HD customers asking about

SUPER HD[2].  (*See generally*, MacKenzie, Borazza and Farhan Decls.).

This  is  precisely  the  type  of  confusion  that  the  Eleventh  Circuit  has  dubbed  most

important:    "the  consumers  of  the  relevant  product  or  service,  especially  the  mark  holder's

customers, turn the key" [to establishing actual confusion] . . . "[a]ll potential consumers of the

relevant  product  or  service,  including  middlemen,  can  inform  the  inquiry,  and  the  ultimate

consumers deserve special attention."  *Caliber*, 605 F.3d at 936-37; *see also Safeway Stores*, 675

F.2d  at  1167  (two  instances  of  actual  confusion  sufficient  because  "the  people  confused  are

---

[2] "Evidence of misdirected telephone calls is probative evidence of actual confusion."  *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1361 (S.D. Fla. 1998).

precisely those whose confusion is most significant: a supplier, presumably relatively familiar with an enterprise since he is actually providing it with goods, and a customer, without whom the business would not exist").  The actual consumer confusion between BPI's A-HD and Cellucor's SUPER HD tips the scale strongly in favor of granting BPI's requested injunctive relief.

### C.   BPI's Other Statutory and Common Law Trademark Infringement and Unfair Competition Claims Are Likely to Succeed on the Merits

Count II of BPI's complaint is a claim for unfair competition under 15 U.S.C. § 1125(a). Compl. at ¶¶ 36-43.  Count III of BPI's complaint is a claim for infringement of an unregistered trademark under Florida common law.  Compl. at ¶¶ 44-48.  Count IV of BPI's complaint is a claim for unfair competition under Florida common law.  Compl. at ¶¶ 49-57.  The success of all of these causes of action turns on whether there is a likelihood of confusion.  *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1025-26 (11th Cir. 1990) ("[t]he elements of common law and statutory trademark infringement are identical"); *Caliber*, 605 F.3d at 935, n. 16 (likelihood of confusion is an essential element to a claim of unfair competition under § 1125(a)); *Babbit*, 38 F.3d at 1181 (the analysis applied to common law unfair competition claims is the same as the analysis under 15 U.S.C. § 1125(a)); *Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.*, 2012 WL 234105 *3 (S.D. Fla. Jan. 24, 2012) ("[t]he legal standard for unfair competition ... and trademark infringement under both the Lanham Act and common law has been held to be essentially the same.").  Accordingly, the remaining causes of action asserted in BPI's complaint are likely to succeed on the merits for the same reasons that BPI's cause of action for infringement under 15 U.S.C. § 1125(a) is likely to succeed.

### D.   BPI is Being Irreparably Harmed By Cellucor's Use of SUPER HD

As discussed in detail above, all of the seven factors used by the Eleventh Circuit to determine the likelihood of confusion weigh heavily in BPI's favor, demonstrating its likelihood

of success on the merits and irreparable harm.  *See E. Remy Martin & Co*, 756 F.2d at 1530 ("[a] sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm").  Indeed, SUPER HD's entry into the nutritional supplement market is irreparably harming BPI and the goodwill associated with the A-HD Mark, and will continue to do so unless enjoined.  In the few weeks that SUPER HD has been promoted and sold, there have already been at least six instances of actual consumer confusion.  (*See generally* MacKenzie, Borraza & Farhan Decls.).  Moreover, A-HD's reputation as a high quality product amongst consumers may be endangered by Cellucor's introduction of a nearly identical muscle sculpting product with a confusingly similar name.  An injunction is necessary to prevent further harm to BPI and the goodwill associated with its A-HD Mark.

### E.    The Balance of Hardships Tips Overwhelmingly in BPI's Favor

For an preliminary injunction to issue, the threatened injury to BPI must be greater than any damage the proposed injunction may cause Cellucor.  *Carillon*, 112 F.3d at 1126.  Here, the threatened injury to BPI is extraordinary, and much greater than any damage that may be caused by enjoining Cellucor's use of SUPER HD in connection with nutritional supplements.

BPI has devoted substantial time, effort and resources to the development and extensive promotion of the A-HD product.  BPI has been marketing and selling its a-HD product for over a year and has expended over $ 470,000 in advertising associated with its A-HD product. (Ettinger Decl. ¶¶ 4, 9 and 11).  As a result of BPI's efforts, the public has come to recognize the A-HD Mark and A-HD as signifying a high quality product geared towards enhancing muscular physique.  The goodwill associated with A-HD is demonstrated by its being BPI's number one seller at GNC retail stores, generating $ 5.7 million in gross sales revenue which has been consistently increasing, and A-HD receiving over a 4 out of 5 star consumer rating on GNC's

website as well as an "excellent" consumer rating on bodybuilding.com. (Ettinger Decl. ¶ 8 and Hernandez Decl. Exs. 2-4).

Cellucor, on the other hand, started selling SUPER HD in February 2012 and promoting it the month before. (Hernandez Decl. Exs. 20, 21.) SUPER HD has not yet established a strong commercial presence or reputation. (*See id*. Exs. 8, 9). Indeed, it is currently only being sold on www.gnc.com but this will change if not enjoined. (*Id*. Ex. 20). Accordingly, changing the product name now would place a minimal burden on Cellucor compared to the harm to BPI if Cellucor is permitted to continue using its confusingly similar mark on a product nearly identical to A-HD. *See Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F. Supp.2d 1347, 1364 (S.D. Fla. 1998) (minimal harm where there was no significant commercial presence or reputation). Furthermore, any damage to Cellucor associated with enjoining its use of SUPER HD is by Cellucor's own making as a result of intentionally adopting a mark confusingly similar to A-HD for a nearly identical product.

**F.    The Public Interest is Served by Issuance of an Injunction Against Cellucor's Use of SUPER HD for Nutritional Supplements**

Finally, the public interest will be served if Cellucor is enjoined from using SUPER HD because it will minimize confusion in the marketplace. *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1207 (11th Cir. 1997) (noting a strong public interest in preventing deception of consumers in the marketplace); *Popular Bank of Florida*, 9 F. Supp.2d at 1364 (public policy concerns weigh in favor of preliminary injunctive relief "in order to minimize confusion in the marketplace").

**III.    CONCLUSION**

For the foregoing reasons, BPI respectfully requests that the Court issue a preliminary injunction against Cellucor's use of SUPER HD for nutritional supplements.

Dated: February 28, 2012

By: __/s/ Cary A. Lubetsky, Esq._____
Cary A. Lubetsky, Esq. (FBN 961360)
cal@khllaw.com
Michael J. Henderson, Esq. (FBN 530921)
mjh@khllaw.com
KRINZMAN, HUSS & LUBETSKY
800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone:  (305) 854-9700
Facsimile:  (305) 854-0508

Stephen J. Akerley (*pro hac vice pending*)
stephen.akerley@dechert.com
Sarah Wager (*pro hac vice pending*)
Sarah.wager@dechert.com
DECHERT LLP
2440 W. El Camino Real
Suite 700
Mountain View, CA  94040-1499
Telephone:  650  813  4800
Facsimile:   650  813  4848

Christine Hernandez (*pro hac vice pending*)
Christine.hernandez@dechert.com
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19104-2808
Telephone:  215.994.4000
Facsimile:  215.994.2222

*Attorneys for Plaintiff*
*Brain Pharma, LLC*